# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. '21 MJ3009
One silver Apple iPhone X; model number A1686; IMEI )
#: 354858092028706; impounded into evidence under )
USPIS evidence barcode # IS0001667658 )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution and Possession with Intent to Distribute a Controlled Substance; |
| 21 U.S.C. §843(b) | Unlawful Use of a Communications Facility to Facilitate the Distribution of |
| 21 U.S.C. §846 | a Controlled Substance; Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

See attached Affidavit of US Postal Inspector Matt E. Carroll

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Matt E. Carroll, US Postal Inspector
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by   Telephone   *(specify reliable electronic means)*.

Date: July 28, 2021

*Judge's signature*

City and state: San Diego, CA                Hon. Michael S. Berg, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A
## PROPERTY TO BE SEARCHED

The **Target Cellphone** is described as one silver Apple iPhone X; model number A1686; IMEI #: 354858092028706; impounded into evidence under USPIS evidence barcode # IS0001667658 at the USPIS San Diego Field Office, within the Southern District of California.

# ATTACHMENT B
## ITEMS TO BE SEIZED

The evidence to be searched for and seized in the **Target Cellphone** concerns violations of 21 U.S.C. §§ 841(a)(l), 843(b) and 846, and is described as follows:

All records, documents, files, materials, or items, in whatever form, paper, electrical, or electronic found in the location described in Attachment A that constitute or contain evidence of a crime, contraband, fruits of a crime, proceeds of a crime, other items illegally possessed, instrumentalities, or property designed for use, intended for use, or used in committing a crime of violations of Title 21, United States Code, Sections 841(a)(l) (distribution and possession with intent to distribute a controlled substance), 843(b) (unlawful use of a communication facility (including the mails) to facilitate the distribution of a controlled substance), 846 (conspiracy to distribute a controlled substance).

(A) All documents, photographs, and records containing data reflecting or memorializing the ordering, possession, purchase, storage, distribution, transportation, and sale of controlled substances, including buyer lists seller lists, pay owe sheets, records of sales, log books, drug ledgers, personal telephone / address books containing the names of purchaser and suppliers of controlled substances, electronic organizers, telephone bills, telephone answering pads, and bank and financial records.

(B) All documents, records, and items related to passwords, password files, test keys, encryption codes, or other information necessary to access computer files, computer software, storage devices, digital wallets or funds, or other password-protected data.

(C) With respect to any and all electronically stored information in mobile phones and PDAs, agents may access, record, and seize the following:

    i.    Telephone numbers of incoming/outgoing calls stored in the call registry;

    ii.    Digital, cellular, and/or telephone numbers and/or direct connect numbers, names and identities stored in the directories;

    iii.    Any incoming/outgoing text messages relating to violations of Title 21, United States Code, Sections 841, 843, and 846;

       iv.      Telephone subscriber information;

       v.      Telephone numbers stored in the cellular telephone and/or PDA; and

       vi.      Any other electronic information in the stored memory and/or accessed by the active electronic features of the digital or mobile phone including but not limited to photographs, audio recordings, videos, e-mail, and voice mail relating to violations of Title 21, United States Code, Sections 841, 843, and 846.

(D)    Any and all digital software, that is, digital information that can be interpreted by a computer and any of its related components to direct the way they work. This includes but is not limited to programs to run operating systems, applications, utilities, compilers, interpreters, and communications programs.

(E)    Any and all user-attribution data, to include data reflecting who used or controlled the computer or electronic storage device at or around the time that any data reflecting criminal activity within the scope of this warrant was created, accessed, deleted, modified, copied, downloaded, uploaded, or printed. User-attribution data includes registry information, computer logs, user profiles and passwords, web-browsing history, cookies, electronic mail stored on the computer or device, electronic address books, calendars, instant messaging logs, electronically-stored photographs and video, file structure, and user-created documents, including metadata.

# AFFIDAVIT FOR SEARCH WARRANT

I, Matt Carroll, being duly sworn, hereby depose and state:

# TRAINING AND EXPERIENCE

1. I am a Federal Agent employed as an inspector by the U.S. Postal Inspection Service ("USPIS"). I am an "investigative or law enforcement officer" of the United States within the meaning 18 U.S.C. 2510(7) and a federal law enforcement officer under Fed. R. Crim. P. 41(a)(2)(C). I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. 3061.

2. I have been employed as a Postal Inspector since June 2012. From June 2012 through September 2012, I attended the Basic Postal Inspector Academy. I am a member of the San Diego Contraband Interdiction and Investigations ("CI2") Team. Prior to this assignment, I was assigned to the US Postal Inspection Service's Mail Theft and Violent Crimes and the Mail Fraud and Money Laundering teams in San Francisco, California and the Mail Theft and Violent Crimes team in San Diego, California. I have had formal training in controlled substance investigations, and have become familiar with the manner in which controlled substances are packaged, marketed, cultivated, manufactured and consumed. I also serve as an Anti-Money Laundering ("AML") program specialist for the USPIS which involves conducting investigations and providing expertise on money laundering and bank secrecy act enforcement.

3. I also possess a Master's Degree in Accounting and an active Certified Public Accountant ("CPA") license in the State of Massachusetts. Additionally, I hold the private industry computer certifications CompTIA A+ and Security+ which cover computer/network repair and data/network security, respectively. Over the course of my employment, I have attended several training courses related to identity theft, drug cartels and narcotics trafficking, money laundering, bitcoin and cryptocurrency, the dark web, cell phone investigations and asset forfeiture.

4. My current duties include investigating violations of the federal Controlled Substance Act and related offenses. I have also had training regarding the investigation of

individuals who use the U.S. mail to transport controlled substances and proceeds from their sale, and who use Postal Money Orders to launder the proceeds.

## PURPOSE OF WARRANT

5. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, witness interviews, reviews of documents, and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of a search warrant, it does not set forth every fact that I or others have learned during the course of this investigation. This affidavit supports an application for a warrant authorizing a search of the following:

(1) One silver Apple iPhone X; model number A1686; IMEI #: 354858092028706; impounded into evidence under USPIS evidence barcode # IS0001667658 at the USPIS San Diego Field Office, within the Southern District of California (as described in Attachment A) (hereinafter the "**Target Cellphone**");

for the items described in Attachment B; in violation of Title 21, United States Code, Sections 841(a)(l) (distribution and possession with intent to distribute a controlled substance), 843(b) (unlawful use of a communication facility (including the mails) to facilitate the distribution of a controlled substance), and 846 (conspiracy to distribute a controlled substance).

## PROBABLE CAUSE

### Investigation Summary

*Case Initiation*

6. On May 18, 2020, I received a lead from USPIS analysts regarding the address PO Box 532614, San Diego, CA 92153 (hereinafter "Box 532614"). Box 532614 was believed to be receiving proceeds of controlled substance sales via the US Mail from the

2

Tupelo, MS area.

7. On May 19, 2020, I obtained a copy of the PS Form 1093 – *Application for Post Office Box Service*, for Box 532614. From that form, I learned that Box 532614 was opened on January 25, 2020 by Jamiron EATMON ("EATMON") who used the physical address of 2854 Evans Cir., Tupelo, MS 38801 and phone number of (619) 240-4405 to open that box. Based on information discussed herein, I have probable cause to believe that (619) 240-4405 is the phone number assigned to the **Target Cellphone**.

8. On May 20, 2020, I searched law enforcement databases. Through my searches, I obtained a copy of EATMON's current Florida driver's license and his driver's license photograph.

9. While using USPS databases, I identified several suspicious parcels mailed from the San Diego, CA area to several addresses in the Tupelo, MS area which had a direct association to parcels mailed to Box 532614, the box opened by EATMON, to include but not limited to, the following addresses:

2750 EVANS CIR, TUPELO, MS 38801

PO BOX 622, VERONA, MS 38879

389 COUNTY ROAD 125, HOULKA, MS 38850

***Seizure of 943 Counterfeit M30 Oxycodone Pills Containing Fentanyl and Identification of the Target Cellphone***

10. On May 27, 2020, I was alerted that Priority Mail parcel bearing tracking number 9505 5144 9587 0147 5147 41 addressed to "Darren Weatherspoon 2750 Evans Circle Tupelo, MS, 38801," with the return address of "Alicia Weatherspoon 1516 Hicks St Oceanside, CA, 92054" was mailed from Carlsbad, CA (within the Southern District of California) on May 26, 2021 (hereinafter "Subject Parcel 1"). On June 5, 2020, Subject Parcel 1 was sent to the USPIS San Diego Field Office for further investigation by USPIS personnel.

11. On June 8, 2020, after inspecting the parcel, I determined that Subject Parcel 1 had various indicia raising suspicion, including, but not limited to, being heavily sealed

and using excessive tape; a return address with a name that could not be associated with that address; and a recipient address that also could not be located with the name of the individual listed as the recipient among others. On that same day, a trained and certified narcotics detection dog and the dog's Border Patrol handler conducted an exterior examination of Subject Parcel 1 and the canine alerted to the presence of the odor of controlled substances on the parcel. On June 11, 2020, the Honorable Daniel E. Butcher authorized Southern District of California federal search warrant number 20MJ2263 for Subject Parcel 1.

12. On June 12, 2020, I searched Subject Parcel 1 pursuant to the warrant, and it was found to contain approximately 126.3 grams of suspected counterfeit M30 oxycodone pills. One pill was selected at random and was field tested using the TruNarc Handheld Narcotics Analyzer which field tested positive for acetaminophen. I know from my training and experience that legitimate M30 oxycodone pills do not contain acetaminophen as an active ingredient; thus, these pills appeared to be counterfeit M30 Oxycodone pills containing fentanyl which are commonly referred to on the street as "blues" or "roxys".

13. A laboratory test was conducted by the US Postal Inspection Service's National Forensic Laboratory ("USPIS FLS") on the pills contained in Subject Parcel 1. USPIS FLS determined that 943 pills were contained inside Subject Parcel 1. One pill was selected at random by a USPIS FLS forensic chemist and was found to contain N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), 4-anilino-N-phenethylpiperidine ("4-ANPP"), and acetaminophen. The net weight of the pills and fragments (excluding the analyzed pill) was $105.27 \pm 0.05$ grams. Fentanyl and 4-ANPP are Schedule II controlled substances.

14. I have reviewed surveillance video of the mailing of Subject Parcel 1 from the Carlsbad Main Post Office. I have reviewed EATMON's Florida driver's license photograph, and, based upon my review of the surveillance video and the photograph of EATMON, as well as the other information detailed herein, I believe that EATMON was the individual who mailed Subject Parcel 1.

15. On June 5, 2020 while using USPS databases, I learned that phone number (619) 240-4405 (the **Target Cellphone**) had called the USPS customer service hotline to inquire about Subject Parcel 1. This is the same phone number listed on the Post Office Box Application mentioned previously herein that was used by EATMON when he opened the box. A DEA administrative subpoena was served on AT&T for subscriber information associated to cellular phone number (619) 240-4405. AT&T responded to the subpoena, and I learned that cellular phone number (619) 240-4405 was assigned to the AT&T subscriber account of "Jamiron Eatmon."

*Seizure of 1.7 Kilograms of Methamphetamine*

16. On November 4, 2020, I was alerted that Priority Mail parcel bearing tracking number 9505 5158 1253 0308 4648 33 addressed to "Tayanda Armstrong 389 County Road 125 Houlka, MS, 38850," with the return address of "Evan Brower 2007 Estrella Road Prescott, AZ, 86305" was mailed from Imperial Beach, CA (within the Southern District of California) on November 3, 2021 (hereinafter "Subject Parcel 2"). On or about the same date, I referred Subject Parcel 2 to Inspectors in Mississippi. On November 5, 2020, I was informed that Subject Parcel 2 had been intercepted by USPIS personnel.

17. On November 10, 2020, after an inspector in Mississippi determined that the mailing address in Prescott, AZ did not who anyone by the surname of Brower living at that address and after a narcotics detector dog alerted to the exterior of the parcel, United States Magistrate Dave Sanders, in the Northern District of Mississippi, authorized a federal search warrant number in Case No. 1:20-MJ-35 for Subject Parcel 2. On or about the same date, Postal Inspector C. Tutor searched the parcel pursuant to the warrant, and it was found to contain approximately 4 pounds of a clear, crystalline substance that Inspector Tutor recognized, based on his training and experience, to be consistent with methamphetamine.

18. A lab test was conducted by the USPIS FLS on the clear, crystalline substance contained in Subject Parcel 2. USPIS FLS determined that the clear, crystalline substance was found to contain d-methamphetamine hydrochloride with a $96 \pm 3\%$ purity and

5

weighed 1,781.84 ± 0.10 grams. Methamphetamine is a Schedule II controlled substance.

19. I have reviewed EATMON's Florida driver's license photograph and, based on my review of the surveillance video of the mailing of Subject Parcel 2 from the Imperial Beach Main Post Office. I believe that EATMON was the individual who mailed Subject Parcel 2.

**Seizure of 1,000 Counterfeit M30 Oxycodone Pills Containing Fentanyl**

20. On or about November 20, 2020, Inspector Tutor informed me that he had intercepted Priority Mail parcel bearing tracking number 9505 5138 1726 0321 4157 10 addressed to "JEFFREY FLEMINGS PO BOX 622 VERONA, MS, 38879" with the return address of "BILL WILLIAMSON 2993 W LODGEPOLE LANE SHOW LOW, AZ, 85901" which was mailed from Chula Vista, CA (within the Southern District of California) on November 16, 2020 (hereinafter "Subject Parcel 3").

21. On November 19, 2020, before I was contacted by Inspector Tutor, the Honorable Jane M. Virden authorized Northern District of Mississippi federal search warrant number 4:20-MJ-1016 for Subject Parcel 3. On that same day, after inspecting the parcel, the Postal Inspector determined that the package included a return address with a name that could not be associated with that address; and a recipient address that also could not be located with the name of the individual listed as the recipient. In addition, the return address on the package was "Show Low, AZ" which was determined to be eight hours from the mailing point in Chula Vista, CA. The Hon. Jane M. Virden signed the search warrant for Subject Parcel 3. On November 20, 2020, Postal Inspector C. Tutor searched the parcel pursuant to the warrant, and it was found to contain approximately 115.4 grams of suspected counterfeit M30 oxycodone pills. Inspector Tutor and agents from the Mississippi state police attempted to conduct a controlled delivery of Subject Parcel 3; however, the intended recipient never picked up the parcel.

22. A laboratory test was conducted by the USPIS FLS on the pills contained in Subject Parcel 3. USPIS FLS determined that 1,000 pills were contained inside Subject Parcel 3. Two pills were selected at random by a USPIS FLS forensic chemist and were

1  found to contain fentanyl, 4-ANPP, and acetaminophen. The net weight of the pills and
2  fragments (excluding the analyzed pills) was $109.84 \pm 0.05$ grams. Fentanyl and 4-ANPP
3  are Schedule II controlled substances.

4      23.    I have reviewed EATMON's Florida driver's license photograph, and based
5  upon my review of the surveillance video of the mailing of Subject Parcel 3 from the
6  Rancho Del Rey Post Office in Chula Vista, CA, I believe that EATMON was the
7  individual who mailed Subject Parcel 3.

**Seizure of $20,000 in US Currency**

9      24.    On March 23, 2021, I was alerted Priority Mail parcel bearing tracking
10 number 9505 5100 1303 1081 4044 19 addressed to "Jamiron Eatmon PO Box # 532614
11 San Diego CA, 92153," with the return address of "Hazel Eatmon 3236 Shonda Circle
12 Tupelo MS, 38801" was mailed from Tupelo, MS on March 22, 2021 (hereinafter "Subject
13 Parcel 4).

14     25.    On March 26, 2021, I came in contact with Subject Parcel 4 at the Otay Mesa
15 Postal Store, within the Southern District of California, and I detained it for further
16 investigation. On March 29, 2021, I met with I met with United States Border Patrol Agent
17 (BPA) Cary Parsoneault and her trained narcotic detection canine, "Falco" at the at the
18 USPIS San Diego Field Office, within the Southern District of California. The canine team
19 conducted an exterior examination of Subject Parcel 4. After the canine team examined
20 Subject Parcel 4, BPA Parsoneault told me "Falco" alerted to the presence of the odor of
21 controlled substances on Subject Parcel 4.

22     26.    On March 30, 2021, the Honorable Bernard G. Skomal authorized federal
23 search warrant number 21MJ1175 for Subject Parcel 4. On March 31, 2021, I searched
24 Subject Parcel 4 pursuant to the warrant and found it to contain $20,000 in US Currency in
25 various denominations.

26     27.    On March 29, 2021 while using USPS databases, I learned that EATMON had
27 contacted USPS customer service via email inquiring about the status of Subject Parcel 4.
28 EATMON provided the contact phone number (619) 240-4405 (the **Target Cellphone**).

*Arrest of EATMON and the Seizure of the Target Cellphone*

28.     On May 26, 2021, the Honorable Michael S. Berg authorized a three-count criminal complaint and arrest warrant for EATMON for violations of 21 USC 841(a)(1) – Possession with Intent to Distribute Methamphetamine and Fentanyl. On or about May 27, 2021, a Homeland Security Investigations ("HSI") agent entered EATMON into the Department of Homeland Security's ("DHS") Traveler Enforcement Compliance System ("TECS") with a request to detain and send EATMON to secondary inspection upon entry into the United States.

29.     On June 18, 2021, the Honorable Allison H. Goddard authorized Southern District of California cellular tracking warrant number 21MC0915 for EATMON's AT&T cellphone number (619) 240-4405 (the **Target Cellphone**), and on June 25, 2021 the warrant was served on AT&T by the US Postal Inspection Service's Technical Services Unit.

30.     From June 26 through July 14, 2021, I monitored the **Target Cellphone's** location, and I observed the **Target Cellphone** moved between the Houston, TX and Tupelo, MS areas over multiple days. On July 13, 2021, I observed that the **Target Cellphone** was travelling west on Interstate 40 from the Tupelo, MS area, and on July 14, 2021 I observed that the **Target Cellphone** was located in the San Diego, CA area and appeared to be travelling southbound on Interstate 5 towards the US/Mexico border. I observed that at approximately 1:35 PM on July 14, 2021 the **Target Cellphone** was located in the vicinity of the Otay Mesa Port of Entry. Based on this movement, it appeared to me that EATMON and the **Target Cellphone** entered Mexico via Otay Mesa around that time and date.

31.     On July 14, 2021 at approximately 4:10 PM, EATMON presented himself for admission into the United States at the San Ysidro Port of Entry primary vehicle lanes, within the Southern District of California, driving a Ford Mustang bearing California tag number 7FAF463. Based on a NCIC and TECS alert, EATMON was sent to secondary inspection. At approximately 5:15 PM, a Customs and Border Protection ("CBP") Officer

8

contacted me and advised that EATMON had been sent to secondary inspection and detained at the San Ysidro Port of Entry based on the USPIS arrest warrant. CBP Officers searched EATMON's person and vehicle incident to EATMON's arrest and pursuant to the border search exemption. During the search, CBP Officers seized $27,194 US Currency in various denominations, two laptop computers, and the **Target Cellphone**. On the same date, the US Currency, the two laptop computers, and the **Target Cellphone** were transferred to my custody, and I impounded them into evidence at the USPIS San Diego Field Office, within the Southern District of California.

## OPINIONS AND CONCLUSIONS

32. Based on the vicinity of the **Target Cellphone** and the fact that EATMON had the **Target Cellphone** in his possession at the time of his arrest and entry into the United States, I believe that cellphone number (619) 240-4405 is assigned to the **Target Cellphone**.

33. Through the course of my training, experience, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics traffickers to work in concert with other individuals, and do so by utilizing computers, laptops, cellular phones, pagers, and portable radios to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distribution of controlled substances, which are commonly secreted inside parcels shipped through use of the US Mail and private courier services such as Federal Express (FedEx) and United Parcel Service (UPS). Typically, drug traffickers who distribute controlled substances by shipping parcels are in frequent telephonic and/or online contact with co-conspirators in order to receive instructions or updates on the status of their orders and are attempting to continue to track the delivery of the parcels as I believe EATMON was doing using the **Target Cellphone**.

34. I also know, based on my training and experience, that many current cellular telephones (such as the **Target Cellphone**) are basically small computers. Many of them have the ability to send text messages, email messages, access the Internet, and to store

1. mass quantities of information. I know that many people use their phones as computers and it is feasible that a cellular telephone could have been used in this case to communicate with additional, unidentified suspects. Some of these electronic records might take the form of files, documents, and other data that is user-generated. Some of these electronic records might take a form that becomes meaningful only upon forensic analysis.

35. Based on the probable cause set forth in the affidavit, I believe a forensic examination of the **Target Cellphone** will uncover additional evidence of EATMON's participation in narcotics trafficking and will reveal photographs, documents, and communications referring or relating to this investigation.

## CELL PHONE SEARCH WARRANT METHODOLOGY
## Procedures for Electronically Stored Information

36. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such

acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

37. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

38. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**GENUINE RISKS OF DESTRUCTION**

39. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

**PRIOR ATTEMPTS TO OBTAIN DATA**

40. The United States has not attempted to obtain this data by other means.

**CONCLUSION**

41. Based on the facts set forth in this affidavit, I believe there is probable cause that evidence of a crime, contraband, fruits of a crime, proceeds of a crime, other items illegally possessed, instrumentalities, or property designed for use, intended for use, or used in committing a crime of violations of Title 21, United States Code, Sections 841(a)(l) (distribution and possession with intent to distribute a controlled substance), 843(b) (unlawful use of a communication facility (including the mails) to facilitate the distribution of a controlled substance), and 846 (conspiracy to distribute a controlled substance) are

concealed in the locations identified in Attachment A. Accordingly, I request the issuance of a search warrant authorizing the search of the locations described in Attachments A, as well as the seizure of items described in Attachment B.

42.   I declare under penalty and perjury the foregoing is true and correct to the best of my knowledge and belief.

Matt Carroll
United States Postal Inspector

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on July 28, 2021.

Hon. Michael S. Berg
United States Magistrate Judge